IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

DOMESTIC BANK,

          Appellant-Defendant,

    v.                              Civil Action No.  AW-04-3549

SHARON M. FOREMAN,

          Appellee-Plaintiff.

---

## MEMORANDUM OPINION

Appellant-Defendant Domestic Bank ("Domestic" or "Lender") appeals a bankruptcy court Order finding, among other things, that Domestic failed to include a discount fee of $648.32, as a finance charge, within the calculation of the Annual Percentage Rate disclosed to Appellee-Plaintiff Sharon Foreman ("Foreman" or "Borrower") in connection with a consumer loan.  Borrower brought this action under several related Consumer Protection Statutes, sometimes referred to as the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*, and Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639. Specifically, Forman alleges, *inter alia*, that she was not provided accurate disclosures of the amount financed or finance charges as required under TILA.

The five issues on appeal bear solely on damages,[1] and the bankruptcy court's factual findings in relation to damages.  Because this Court has reviewed the entire record and has carefully examined the parties' submissions, "the decisional process would not be significantly aided by oral argument."

---

[1]  It is undisputed that both a default occurred — Domestic failed to respond to a notice of recission as required by statute — and that a right of recission exists from that violation.

BANRKR. R. 8012 (2005).  For the reasons that follow, this Court vacates the bankruptcy court's determination of the APR calculation and remands.

## FACTUAL & PROCEDURAL BACKGROUND

On May 16, 2000, Foreman entered into a loan transaction to borrow $16,208.00 from Domestic. Domestic secured the loan by placing a lien on Foreman's principal residence.  As part of the loan, Domestic disclosed to Foreman, in a Truth in Lending Act Statement ("TILA Statement"), an Annual Percentage Rate ("APR") of 15.456%, and the amount financed to the Borrower as $14,516.28.  The amount financed includes a mandatory credit insurance premium of $6.95 a month.  At a loan closing with Domestic, Foreman prepaid a discount fee of $ 648.32 and a loan origination fee of $810.40.  On April 26, 2003, Foreman gave Domestic written notice of her election to cancel the loan.  Domestic failed to respond to Foreman's notice of rescission.

On May 16, 2003, Foreman filed an adversary proceeding against Domestic alleging that she was not timely provided the disclosures required under HOEPA.  Foreman's complaint alleged that, although Domestic represented the APR of the loan as 15.456%, the actual APR of the loan was 17%. Foreman also alleged that Domestic failed to provide accurate disclosures of the amount financed or finance charges, as required under TILA.  Specifically, Foreman alleged that the actual APR calculated with respect to the loan exceeded the stated APR in Domestic's TILA Statement, and that the total fees and points paid at closing exceeded the amount allowed by TILA and HOEPA.

Domestic never filed an Answer to Foreman's Complaint.  On September 10, 2003, Foreman filed a Motion for Entry of Judgment.  The bankruptcy court entered Default against Domestic for its failure to Answer.

On November 17, 2003, the bankruptcy court held a hearing in this matter to determine damages based on the default judgment. At the hearing, Domestic appeared through counsel. Domestic conceded liability, and instead requested that the bankruptcy court consider whether a violation of TILA had even occurred in connection with awarding the damages. Domestic asserted that in the event there was no violation of applicable law, then the bankruptcy court should award the minimum statutory damages amount. Following oral argument from the parties, the bankruptcy court requested that each party submit a memorandum addressing whether Domestic improperly calculated the APR, thereby causing a violation of TILA or HOEPA.

Foreman submitted a memorandum contending that Domestic's calculation of the APR was inaccurate. Foreman alleged that, in Domestic's TILA Statement, the amount financed failed to deduct the amount paid by the Borrower at settlement. Specifically, Foreman asserted that the sum of $798.32 — the total of $648.32 for discount fee prepaid plus $150 paid to conduct the closing — were not accounted for in the TILA Statement.

Domestic submitted a memorandum pointing to the Code of Federal Regulations and contending that, under an unpublished document from the U.S. Department of Housing and Urban Development ("HUD") concerning 24 CFR § 201.25(c), discount fees are not to be included in the amount financed.[2]

---

[2] Specifically, Domestic points to HUD Title I Mortgagee Letter TI-440 ("HUD Letter"), which provides, in pertinent part:

In accordance with § 201.25(c) of the Title I regulations, the following fees and charges incurred by the lender in connection with a Title I loan may be collected from the borrower in the initial payment, but may not be included in the loan amount or otherwise financed or advanced by the dealer, the manufacturer, or any other party to the loan transaction:

. . .

3

Domestic therefore contends that it was correct to leave discount fees out of the amount financed.

On August 25, 2004, the bankruptcy court held a second hearing announcing an oral ruling. United States Bankruptcy Judge Duncan W. Keir concluded that Domestic violated TILA and HOEPA. Judge Keir's oral opinion can be divided into two distinct parts.

First, Judge Keir found that it was undisputed that a default occurred, as Domestic failed to respond to a notice of recission as required by statute. As a remedy for this violation, Judge Keir found that a recission without condition of return was warranted.

Second, Judge Keir's oral opinion turned to the question of damages. As to the damages remedy, the issue before the bankruptcy court was whether there were two charges that were not factored into the financed amount, and thus the disclosure of that amount was inaccurate under TILA. Judge Keir made certain findings in relation to how that bears upon the damages question. Specifically, Judge Keir concluded that, pursuant to 15 U.S.C. § 605(a); (1) the $648.32 discount fee was an improper non-inclusion in the finance charge; and (2) the $150 closing fee was properly excluded from the finance charges.

Based on the aforementioned violations, the bankruptcy court determined that, under TILA, Foreman was entitled to actual damages in the amount of $648.32, statutory damages in the amount of $2,000.00 ($1,000 for Domestic not responding to the recission notice and $1,000 for Domestic's

---

2.       Discount fee to be paid by the borrower to the lender, but only if the lender can demonstrate a clear relationship between the discount fee being charged and a compensating decrease in the interest rate on the loan.

HUD Letter, Pages 2 and 3.

incorrect disclosure of finance charges), and recission of the loan contingent upon the return of the unpaid

principle balance to the lender.  The bankruptcy court also awarded Foreman attorneys fees in the amount

of $4,508.00.[3]  Thereafter, the bankruptcy court entered an Order of Final Judgment in favor of Foreman.

Domestic timely filed a Notice of Appeal.

## STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the

bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  In re Deutchman, 192

F.3d 457, 459 (4th Cir. 1999).  Here, Domestic contends that the bankruptcy court reached a correct

conclusion of law, but made an error in a finding of fact.  Therefore, this Court will review the bankruptcy

court's findings for clear error.  Under that standard, "findings of fact will be affirmed unless the [appellate

court's] review of the entire record leave [it] with the definite and firm conviction that a mistake has been

committed."  Harmon v. Robertson, 772 F.2d 1150, 1152 (4th Cir. 1985).

## DISCUSSION

On appeal, Domestic argues that the bankruptcy court erred:  (1) in finding that Domestic failed

to include a discount fee of $648.32 as a finance charge within the calculation of the APR disclosed to

Foreman in violation of TILA; (2) by awarding more than the minimum amount of statutory damages

pursuant to 15 U.S.C. § 1640 in favor of Foreman when Domestic did not violate TILA; (3) in granting

Foreman a right of recission under TILA when Domestic did not violate TILA; (4) by awarding actual

---

[3] At the hearing, Foreman's counsel was directed to submit an application for attorneys fees pursuant to 15 U.S.C. § 1640(c).  Foreman's counsel complied.  Although Domestic was provided an opportunity to respond to the application, Domestic filed no such response.  The bankruptcy court subsequently entered final judgment in favor of Foreman.

damages in favor of Foreman under TILA when Domestic did not violate TILA; and (5) by awarding attorneys fees in favor of Foreman under TILA when Domestic did not violate TILA.  As four of the five issues raised by Domestic challenge the remedies awarded based upon an alleged error in the bankruptcy court's finding a TILA violation, the Court will first address whether a TILA violation occurred.  If a TILA violation has occurred, then Domestic's four remedial issues lack merit. If such a violation has not occurred, then the bankruptcy court's determination of damages might have to be altered.

> A.      Truth in Lending Act ("TILA")

TILA was designed by Congress as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601 (a).  To that end, TILA mandates that creditors make specific disclosures when extending credit to consumers.  See id. § 1638(a).  These disclosures include, inter alia, the amount financed, the finance charge, and the APR. Id.  Because TILA is to be broadly construed to provide protection for the consumer, any failure to disclose information as required by TILA results in a violation.  See Hill v. Allright Mortgage, Co., 213 B.R. 934, 938 (B.R. D. Md. 1996).  TILA requires that the APR disclosed to borrowers be accurate to within one-eighth of one percent (.125%).  See 15 U.S.C. § 1606(c).

TILA defines the amount financed as the total amount of credit provided by the lender, and it equals the proceeds of the loan actually received by the borrower, or the proceeds placed into an escrow account for the benefit of the borrower, plus all expenses financed by the creditor that are not finance charges. C.F.R. § 226.18(b).  For loans that are secured by an interest in real property, like the one here, certain expenses may be deducted from the amount financed and not considered finance charges.  Hill, 213 B.R.

6

at 939.  Such expenses include fees for title examination, insurance, deed preparation, settlement, notary service, obtaining a credit report, appraisal, and application.  Id.; see also 15 U.S.C. § 1605(e).

The term "finance charge" is defined by TILA as the cost the consumer must pay to receive the credit given by the lender.  See Hill, 213 B.R. at 939.  "Finance charge includes charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as a condition to the giving of credit."  Id.  Discount fees are a specific example of finance charges listed under TILA.  15 U.S.C. § 1605, 12 C.F.R. § 226.4.  "The purpose of requiring creditors to disclose finance charges is to provide assurance that TILA's objectives are not circumvented by allowing creditors to conceal the cost of credit."  Hill, 213 B.R. at 939 (citing Mourning v. Family Publ'ns Serv., 411 U.S. 356, 366 (1973)).

Two general types of finance charges exist:  (1) those that are prepaid, i.e., paid at or before settlement, such as discounts or points; and (2) those that are paid over the life of the loan, such as interest.  Id.  Both are factored into the APR as finance charges.  See 12 C.F.R. 226.2(23).  Here, it is undisputed that the $648.32 discount fee was paid at settlement.  Therefore, such prepaid finance charges must be factored into the APR.  Domestic does not dispute that the bankruptcy court correctly determined, as a matter of law, that the $648.32 discount fee must be included in the finance charge.

B.      Calculation of Discount fee into the APR

Domestic contends that the bankruptcy court erred in its factual determination that Domestic failed to include the $648.32 discount fee in the finance charges.[4]  The bankruptcy court's oral opinion made the

_____

[4] Domestic also appears to posit that Foreman's complaint did not raise the issue of Domestic's alleged improper calculations of the APR.  This argument has no merit.  Foreman's complaint alleged that she was not provided accurate disclosures of the amount financed or finance charges.  As both of these factors, deemed "material disclosures," 15 U.S.C. § 1602(u), and indeed the basis upon which

following findings:

> Here, it appears to me, [that the discount fee of $648.32] was retained and required.  And
> I find that notwithstanding the argument of the lender, [this discount fee] should have been
> part of the finance charge.

After a thorough review the record, this Court believes that the bankruptcy court erred in its factual

determination that the $648.32 discount fee was not a finance charge included in Domestic's APR

calculation.  The following illustration of the settlement sheet may be a helpful starting point:

| Description | Financed | Payable at Closing |
|---|---|---|
| 1) (Line 801) Origination Fee   $810.40 | | |
| 2) (Line 802) Loan Discount | | $648.32 |
| 3) (Line 805) Inspection Fee | $075.00 | |
| 4) (Line 810) Flood Monitoring Fee | $08.00 | |
| 5) (Line 811) Service Link Fee | | $150.32 |
| TOTALS | $893.40 | $798.32 |

Total Prepaid Costs

| | | |
|---|---|---|
| 1)Financed Prepaid Finance Charges | | $893.40 |
| 2)Cash Paid for Prepaid Finance Charges | | $798.32 |
| TOTAL PREPAID FINANCE CHARGES | | $1,691.72 |

Based on the settlement sheet above, it appears that Line 802 shows the inclusion of the $648.32 discount

fee.  The $648.32 discount fee was paid at closing, and it appears that Domestic's calculation of the "Total

Prepaid Finance Charges" includes the $648.32 discount fee.  Therefore, this Court concludes that the

bankruptcy court's erred in its factual determination that the $648.32 discount fee was not actually included

as a finance charge.

---

the APR of a loan is calculated, the Court finds that the calculation argument was sufficiently raised in
Foreman's complaint.

Foreman contends that the inaccuracy of the "amount financed," rather than the "finance charge," was the relevant factual issue before the bankruptcy court.[5]  On the one hand, based upon the transcripts of the oral hearings at the bankruptcy court, Foreman's contentions are not unreasonable.  On the other hand, however, the bankruptcy court's oral opinion made a factual determination that "the $648.32 was an improper non-inclusion, if you will, in the finance charge."  Nevertheless, the Court finds that whether the inaccuracy was the "finance charge" or the "amount financed" is irrelevant.  Even assuming that the amount financed was the inaccuracy, the TILA Statement shows that Domestic's calculations of the amount financed were accurate.

It is undisputed that the TILA Statement shows that the amount financed was $14,516.28.  Subtracting the finance charge ($1,691.72) from the loan amount ($16,208.00) equals the amount financed ($14,516.28).  Therefore, even based upon the TILA Statement, Domestic's calculation of the amount financed appears accurate.  The record shows that Foreman attempted to sway the bankruptcy court's calculation by the following calculation:

| | |
|---|---|
| Loan Amount | $16,208.00 |
| Less Amounts Paid by Foreman | $798.32 |
| Actual Loan Amount | $15,409.68 |

Next, Foreman's calculations continued by subtracting the "Finance Charges" ($1,691.72) from

---

[5] Foreman also argues that the default judgment resolved any factual issues relating to whether or not Domestic violated TILA and HOEPA.  This Court cannot agree.  "On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment."  Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  Therefore, this Court cannot find that a default is treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.

the "Actual Loan Amount" ($15,409.68).  The error in this calculation, as apparent in the settlement sheet, is that the amounts paid by Foreman ($798.32) and the Finance Charges ($1,691.72) both include the discount fee of $648.32.  Therefore, adopting Foreman's calculations of the amount financed would effectively result in the double-counting of the discount fee.  Such a result would be erroneous.

In short, even assuming the inaccuracy is the amount financed, this Court finds that the bankruptcy court erred in its factual determination that Domestic's calculations of the amount financed did not include the discount fee.  Therefore, this Court finds that the APR is correctly formulated by Domestic.

C.      Remaining Remedies Issues

Four of the five remaining issues raised on appeal by Domestic challenge the remedies awarded by the bankruptcy court.  This Court notes that each of those remedies challenges are based on an alleged error in the bankruptcy court finding a TILA violation with regard to the APR calculation.  Nevertheless, this Court is also conscientious that another TILA violation is unaltered by this appeal, *i.e.*, Domestic's failure to respond to a notice of recission.  Accordingly, this Court will therefore remand this action back to the bankruptcy court to address the relief, if any, that Foreman is entitled to in light of this opinion.  Having already heard two oral hearings on relief in this matter, this Court is confident that the bankruptcy court is aptly suited to determine any relief that may still be warranted.

**CONCLUSION**

For the reasons stated above, the Final Judgment of the bankruptcy court is REVERSED and REMANDED.  An appropriate order shall shortly follow.

April 15, 2005                                    /s/
Date                                    Alexander Williams, Jr.
                                        United States District Judge